Ms. Paulos. May it please the court. My name is Rachel Paulos. I am a partner at DLA Piper here in Minneapolis and it is my privilege to cover this argument for Mr. Perry. Mr. Perry does maintain all the arguments in his brief and respecting the court's prerogative to determine the issues for oral argument. I would respectfully like to focus on the following three issues. First, two have been merged into one predicate crime for ACCA counting purposes. The issue is what on occasions different from one another means. Second, the Minnesota domestic misdemeanor assault which was enhanced to a felony only because of Mr. Perry's prior criminal record should not have counted as an ACCA predicate. The issue is whether a state misdemeanor statute enhanced to a Mr. Perry representing himself at trial should not have been denied access to the law library. The issue is whether the due process clause requires the pro se defendants representing themselves at trial be provided library access. Your honors, with this case the government now attempts to create the one-minute armed career criminal. This is in contravention of the plain language of the statute, the legislative history, and the case law. Now counsel is one minute in the record? I didn't see that in any of the briefing or any of the stuff. Tell me. The record reflects, your honor, that the PSR states that this all happened very quickly and actually there are statements from the government, the defense counsel, and the defendant himself at the sentencing hearing describing how this all happened in... You're talking about the pointing at the clerk? Yes. And then somebody follows him in a car as he's walking? What? He turns around and shoots at them? That's more than a minute, I think. Actually what the defendant testified at the sentencing hearing was that it happened within moments and seconds. That sounds like minutes very quickly, counsel, that were two. Well, your honor, here's what happened. The defendant walked into the store, he pointed a gun at the cashier, he grabbed the money. A witness saw him running from the store brandishing the gun, which means they were very close because he saw the gun. And before he had left really the premises of the gas station, the defendant took his gun, fired a shot straight in the air to warn off the witness. They were in a car, though, following him, right? He jumped into his car in a sort of vigilante justice and attempted to run down the defendant. But he was close enough that the defendant didn't get very far and fired the warning shot to let him know. And he was so close that he smelled the gunpowder. So you're giving quite a number of details and I see that some of them are in the pre-sentence report. But I have a couple of questions. Is this all that we can look at is what's in the pre-sentence report for the facts to determine whether this was one or two occasions? Well, your honor, it appears that the actual underlying documents were not introduced into the record. The government had marked them as exhibits but didn't admit them. And so I, in addition to the PSR, I'd point the court to the statements that all three of the relevant parties made at the sentencing hearing, which agree on these things. They agree that the assaults happened almost simultaneously. They agree that it happened in the same sort of space. And they agree that it all happened simultaneously. It happened as part of the defendant's robbery and escape. It was a continuous course of conduct to rob the store and escape without encountering anyone else. So what the defense counsel said at the sentencing hearing was, quote, he hadn't left the grounds. And these are happening simultaneously, they're happening in the same location. What the government said was that the robbery that occurred inside the convenience store was one occurrence. And then the subsequent assault that occurred happened where the defendant was walking or running away, and this buy started chasing, the buy started- I guess one of my concerns about this conversation is, where do we stop looking? Because we've got the pre-sentence report facts, and you agree with those? Your client does not object to those, is that correct? Yes, your honor.  Yes, your honor. Then we've got argument from counsel, and Mr. Perry was representing himself at the time, correct? So it's his argument, and correct me if I'm wrong, I'm not sure that he testified. He didn't testify at trial, your honor. And then we've got some of the statements within the documents that are submitted in the course of sentencing memoranda and things. So what I'd like to hear from you is sort of where, are you representing that the parties think we should look at everything that they present, even though it wasn't in evidentiary form, to determine this kind of fact-based issue? No, your honor, and I agree that it is a very intensive fact-based issue. And what this court said in Willoughby was that the three factors that this court will consider in looking at whether crimes are separate from one another for ACC purposes are time, space, and continuity. And I'm sorry, to read directly, so where do we look for those facts? That's where I guess my bottom line question of concern is. We've got facts in the pre-sentence report, but the other sources of information you're pointing to are not evidentiary. They're not, your honor. So can we even look at those? Well- Or are they stipulated to? They were not stipulated to, your honor. I'm providing them to the court as a matter of the record in part of this case. But the PSR, to which the parties did not object, at least with respect to paragraph 33, which describes the incidents in this case, clearly states that the defendant attempted to flee the gas station on foot and that the witness observed him fleeing on foot and chased him down. So all the parties agree on that version of the facts, your honor. And going back to the Willoughby factors, when you look at time, space, and continuity, this all happened very quickly in a way that actually mirrors what happened in the Petty case, your honor. Where six different people were robbed inside of a restaurant, and the court, the Congress, and the Department of Justice agreed that that should count as a simultaneous series of events, simultaneous crimes, and should count as one course of conduct. So if robbing six different people in a restaurant can count as simultaneous, where again, the number of victims was not dispositive in that case. If it was, if it were, then Petty would have turned out differently. So in your argument, as I understand it at the district court, you or Mr. Perry wanted the court to open up the record and actually look at more facts, am I right? Your honor, I was not counsel of the district court. I was just appointed a couple of weeks ago. So, I'll ask it sort of in another way. You're not asking us to limit the type of documents that we look at to determine this. You're not saying, look, we can only look at Shepard documents or anything like that. That's not your position. I'm not saying that, your honor, no. But what I am saying is that under this court's precedent, including what happened repeatedly after Petty, that the three factors that this court looks at, most significantly time, all point to a continuous course of conduct here. And so, what happened with Petty, as the court knows, is that initially, the court said that six different people being robbed in a restaurant constituted different crimes. They all counted as predicates towards the ACCA. The solicitor general confessed error. The case went back to the Eighth Circuit, and on remand, the Eighth Circuit changed course and set a line saying, given that the SGS confessed error, the court agreed that these were separate courses of conduct. And interestingly, the Congress then amended the statute and made very clear that time was a significant factor. And that what they meant by armed career criminal were a series of crimes taking place over time, not crimes happening within seconds or moments or minutes. Counsel, if I can be heavy handed, you need to get to the armed career criminal argument, the one you outlined at the top of the case. Well, so this is the on occasions different from each other. Okay, I'm talking more about the- State misdemeanor issue, Your Honor. Yes, Johnson and Kearney and Rodriguez. All those cases my clerk gave me. Schaefer, lots of cases. Yes, so Your Honor, the disturbing thing about this case is that every predicate used to enhance the defendant to, or used to count the defendant as an ACCA. Every single predicate happened in 2005 in this one incident at the gas station. Even the third alleged predicate crime, the felony domestic assault, was initially only charged elementally, it was a misdemeanor domestic assault. The only reason Mr. Perry was graduated to a felony domestic assault was because of his prior record. And what did the state rely on in graduating him to a felony domestic assault? The exact same two convictions from 2005, which happened in the same court at the same time, at the same trial, that was used to enhance him to a felony count. So we've got, again, Your Honor, a conduct occurring within just moments that is the basis for an armed career classification, which was not the intent of Congress. That's not the nature of your argument. Your argument is that somehow this should have been a misdemeanor, but by virtue of his criminal history, it was elevated to a felony. And I guess my response to that is, so what? A felony is a felony is a felony. And we still count a felony crime of force the same way, whether or not it was enhanced by a prior conviction or not. I think our argument's a little different from that, Your Honor. Our argument is that the state recidivist statutes, which rely on misdemeanors being graduated to felonies, which in fact are not felonies, are not an appropriate application of the ACCA. And in fact, may be a constitutional violation of due process. And so the argument's a little bit broader than that. In Mr. Perry's case, what is disturbing is, again, they weren't using domestic violence conduct. They weren't using unrelated conduct. The state was using the exact same conduct that constitutes his felonies for the first two ACCA countings. So we have a counting problem when it comes to the domestic assault issue. I see that I've cut into what I'd hope to use for my rebuttal time. If the court would grant me leave, I would take my leave. Thank you. No, certainly. Save it. Mr. Genrick. Good afternoon, Your Honors. May it please the court, counsel. AUSA David Genrick on behalf of the government. I think I'd just like to take in perhaps a little different order the three main inquiries and exchanges that you just had with opposing counsel. I'd like to start with the thrust of Judge Kelly's questions with respect to what the court can and should rely on in resolving the ACCA question. And then Judge Benton's question about how much time elapsed and what you might want to do with that factually, and then the felony domestic assault. With respect to the material from the record, the levering case that this court recently decided includes a footnote discussing the sorts of documents that this court would examine in making the ACCA continuous course of conduct determination. And what the court said in levering is you need not have gone beyond the most conservative approach, which was to examine only shepherd related documents, which this court identified as the judgment and the charging documents. Certainly in this case, we also have the unobjected to pre-sentence investigation, which under this court's well settled law, the district court would be entitled then to rely upon in making sentencing determinations. Levering doesn't resolve this, right? Do I read the footnote? It doesn't, in the government's view- It says it doesn't resolve it. It doesn't resolve whether the court could go beyond shepherd documents. But it seems to suggest that the most conservative approach, and that is looking at the shepherd related documents, is acceptable. We have those here, what is in the record other than the pre-sentence report paragraph? Are there shepherd documents in the record? Yes, your honor, and respectfully, I think the record reflects, respectful with respect to counsel's statement that the district court never admitted the exhibits offered by the government. Those exhibits included the complaints that underlie the main offenses and issue that gas station robbery. If you look at the sentencing transcripts of page 45, the district court says I'll accept from Mr. Saxena of the USA at the sentencing hearing what he had offered with respect to those prior convictions. So it's the government's position that the district court at page 45 did accept those as part of the sentencing record. And under the levering case, taking even the most conservative approach, this court could rely upon them. With respect to statements made at the hearing, I think with respect to your question, Judge Kelly, about what do we do with the fact that the defendant who's kind of appearing pro se, although his counsel did make argument at the sentencing hearing, made some statements regarding the offenses. I respectfully submit that if the defendant wanted to testify, he should have been subject to cross-examination. And that's the way that material would have been properly admitted at the sentencing hearing. I think the record does not admit of how the district court was treating those statements. And I'd suggest for purposes of this court's analysis, the complaint material, the PSR documents, and even taking defendant's statements if you wanted to consider them, don't undermine the conclusion that these were separate and distinct offenses. What do those documents and what do those sources tell us? In the government's view, what do they tell us about the nature of that crime? What the complaint indicates is that the defendant committed the armed robbery in the gas station. He came running out of the gas station and he was observed by the victim who ultimately chased him in the vehicle. I don't believe the complaint is clear as to whether what I'll call the second victim was in the car at the time the defendant ran out. Or whether he was on foot and then got in the car. I don't think the complaint or the PSR tells us that. Although- Had to be real close to it though, right? Had to be close. Yeah, go ahead. The complaint indicates that the second victim is then advised by the gas station clerk who runs out of the gas station that they have just been robbed. Whether the second victim then is already in the car or has to get in it, he undertakes to chase the defendant. He indicates that the defendant crosses the street toward a mall. And before the defendant reaches what is referred to as the tree line, the victim sees the defendant is holding a handgun. The victim then indicates that the defendant enters into the trees. And the victim loses sight of the defendant, but a shot then rings out from the trees. And he hears it whiz past and smells gunpowder. Must have been fairly close, certainly, to where the shot was fired. And is this, this is all from the complaint? Yes, yes, your honor. And sort of not traditionally the kind of facts that we adopt from those kinds of documents. Because we're normally looking to see what was the person actually convicted of. So I'm guessing that the kinds of facts that we all think maybe are relevant for this analysis. Was he off the premises? How far away was he? And how much time? Wouldn't have been the kinds of facts that the jury would have found or he would have had to have pled to. Does that matter in how we look at those documents to answer this particular question? Or are we just kind of walking into the footnote and levering that we just haven't resolved yet? I think before directly answering the question, I'd say I think you do have the benefit in the case of the PSR. Which is not quite as detailed as what I've just laid out. But even the government's position is if you just relied on the PSR under the Davidson and other cases of this court, that would suffice. But to take your question, Judge Kelly, I think if the court had reached the question of whether to go beyond Shepard documents. Certainly the court could look at the trial transcript, examine, and by this I mean the district court, hopefully making a record for you. The trial transcript, other evidence presented at trial, and consider that going beyond just the Shepard documents that are identified in Levering and, of course, the Shepard case and its progeny. Whether there'd be a jury finding on those, almost certainly not. There would have been no special jury finding. So are we walking into the footnote, are you, sorry, walking into the footnote in Levering? I don't think you're doing anything but following this court's conclusion in Levering that it's okay to follow the most conservative approach, you need not decide whether you can consider other material. And frankly, Judge Kelly, there isn't a record here beyond the Shepard documents and the PSR for the court to consider except arguably the statements of the defendant at the sentencing hearing. Which I only briefly scanned again before coming up here and I don't think are of much help either way in resolving the question, either as a factual or a legal matter. I just wonder if we're stepping into the very problem that was highlighted and addressed in our ACC cases, the Supreme Court's ACC cases, in fact finding when what you're really doing is increasing the statutory mandatory minimum and the federal court, and whether that should give us pause in this sort of slightly different area of the ACC. Not what the conviction was, but are they separate convictions? I think that probably the best response I'm able to give you, Your Honor, is that question is not before you in this sense. The complaint was offered at the sentencing hearing. And it's the government's position at page 45 that district court admitted or accepted those for purposes of the record without objection. It could be that this court will have to grapple with, how do we deal with the question you're addressing? Where there's an objection, where it's before this court, where the district court either relied on the complaint and there was an objection and it's before this court or didn't rely upon it. Should the government be in a position to take a cross appeal? But that's really not this case.  But here you have a PSR, you've got the admission of complaint without objection, and you have the levering footnote that says the most conservative approach would permit a court under the Shepherd line to review those documents. We can't tell what the district court relied on, right? The district court just stated a conclusion. There's a second instance that's separate and it's distinct, and that's the firing of a gun, right? It just, sentencing transcript 4546, right? Certainly, I mean, the district court said, I'd ask Mr. Saxena, that those materials to which you referred be incorporated into the record wherever they may be now, which is just the physical- But then I'm talking about the conclusions of the district court. The district court doesn't say what the district court relies upon, it just states a conclusion. That's accurate, your honor, but no different as a legal matter than the panoply of court cases that say, you assume that the district court has considered letters it received, filings it received, the trial record, etc., even if the district court doesn't refer to it. So, by the analysis you gave and the documents you're relying on, we have a situation where there's a robbery that occurs. The defendant flees, the clerk runs out, then essentially, someone goes after and chases him into where he is, he's in the tree line across the street in the mall, and he pulls out a gun. And so, my question for you is, is there a case that suggests that that is enough, so that it's not one continuous course of conduct, and if so, what is that case? Factually, I think the case closest is Hamel. It's this court's case, it's cited in the government's brief. There's 25 minutes right on the time. In Hamel, there's 25 minutes on the time. Okay. And of course, the court then repeatedly after just says within minutes, within minutes. Within minutes of each other, I think three times. Go ahead. So, and with respect to both of your Honor's questions, I think I take a half a step back. The test this court employs is a totality of the circumstances test with three factors, as you're all aware. None of those factors is necessarily dispositive in a single case. And either way, it could be short in time and long in distance. It could be in close proximity and location and long in time, which is Hamel. So, I cite Hamel for the proposition that the fact that the second assault in this case occurred in close physical proximity to the gas station does not prevent you from reaching the conclusion they're different. Well, that's true, but here you have time is relatively short. It could be minutes. It could be one minute. It could be five minutes. I guess we don't really know. You're literally across the street from the gas station, and he's still immediately fleeing the scene of the crime. And so, it seems to me that it's at least debatable on all three elements of the, I mean, you do have different victims, but it's debatable on all three elements of the test. I'd say, so let me focus a moment on timing. What this court has said with respect to timing, and this is in the Davidson case, is that, quote, the primary purpose of the pause, the pause that you require between different episodes, is a chance to discontinue criminal activity. And I think that dovetails nicely with sometimes the struggle that appears in the opinions about, well, is one second enough, is ten seconds, two minutes, 20, 25 minutes? I really don't think this court's precedent is so concerned about the amount of time, as it is about whether the defendant has had an opportunity to stop one criminal episode before engaging in another. And on that principle, which is set forth in Davidson, I think this clearly is a separate episode. The defendant has not only left the location, he has made his way across the street, entered a tree line, turned around, and fired a shot. And he could have continued progressing through the trees, continued to the mall. He ultimately was apprehended at his house, or his apartment, I believe, sometime later. Does it matter when the victim number two starts chasing him? In other words, right after he gets out and ends the first offense. So he's being chased, so there's really not, what's the language we use? Sort of a clear opportunity to cease your activity, or a discernible pause in the activity.  I think it matters, Your Honor. I think that's a factor that this court would consider, the amount of time that elapses in the context of, well, what is the activity of the defendant? In this case, I think factually, this is not as difficult as the case that Your Honor just hypothesized. And I would also direct this court's attention respectfully to the Leeson case out of the Fourth Circuit, both in- Is that in your case in your brief, counsel? It's not. Okay, send us a letter, but go ahead and talk about it. Okay, it's cited in Levering and in Davidson. And this court in both cases talk about the Graves case out of the Sixth Circuit versus leasing out of the Fourth. And in Leeson, the facts were that the defendant robbed either a convenience store or a gas station, exited the gas station and pointed a gun at the officer who was standing outside. Actually, it was a grocery store, I think, and pointed a gun at the officer standing outside. And the Leeson court, the Fourth Circuit held that was enough, because again, the defendant, once he exited the store, had completed the robbery. And he engaged in an immediate assault of the officer. I think Leeson, Judge Kelly, is the case closest to the circumstance you're describing. And in that case, the Fourth Circuit concluded under, I believe, this principle that you've set forth, that the primary purpose of the pause is a chance to discontinue, that once the armed robbery was done, exits the store and sees an officer, that that's a separate criminal offense. Council, I'm going to be a little heavy handed here, too, because the one I'm struggling with is the misdemeanor domestic assault. I'm not sure that I completely understand whether this is a double counting argument, which at times it appears to be. Or whether it's categorically something that was a misdemeanor and have elevated to a felony by virtue of prior criminal conduct is impermissible. And I'm just trying to get your best take as to what this argument is about. And I may continue a little bit with opposing counsel on it as well. I struggled as well, your honor. I thought that the opening brief, which again, this council did not prepare, was conclusory with respect to a due process violation. The way that the government characterized it in this brief was I cited Thomas, which was a habitual offender case, indicating there's no double punishment concern in a habitual offender context. Thinking that was analogous to what appeared to be the claim that, well, my sentence was enhanced below, and now it's being enhanced again. And it feels like double counting is the way it was put, or double punishment. With respect to categorical misdemeanor as an ACCA, can't be done, enhanced. The government didn't find any support for that argument either. I'm probably not very helpful to the court. I frankly, I struggled to characterize what the defendant's argument was. I thought the habitual offender case law was analogous. And there is no support that the government's aware for the notion that an enhanced felony, the felon may just, may I finish? Proceed, sure. And I may ask one more question. No, I know. Me too, go ahead. It's an element of the offense that there was a prior felony to enhance it. So it is a felony by virtue of state law, as you said, your honor, a felony is a felony for purposes of the ACCA. Well, my problem with it, and this maybe gets more of the double counting thing. I think that the version we heard today, and again, opposing counsel can correct me, is that you have three ACCA crimes. And the last one was essentially made into a felony by virtue of the prior two. And so it's not really three independent crimes, it's really two and then one that involves double counting. And my question to you is, it may not be a double punishment problem, but is it a counting problem under the ACCA? And the answer, I believe, your honor, is no. Because although the court characterized it in the question as they aren't really three separate crimes, they are three separate crimes. It's just that the third crime depended on commission of a prior felony to enhance it. And I do think the closest analogy to at least the argument that's actually made in his brief, and of course the government would preserve its waiver claim if there's a new argument being made here today. But I think it is an argument that it is indisputably a third crime. It is indisputably a felony under state law. It has an additional element, different elements altogether given it's domestic, but at least the element that you've got a prior offense. And not only is the government believe there's no support for the notion that a felony that includes a requirement of a prior conviction not count for the ACCA. I think the court's habitual offender precedent would support the notion that there's a reason that it counts. And that's not either double counting or due process or erases that third offense as a crime, because it remains a crime. My question is, does the misdemeanor statute have to have violent force in it before it's enhanced? Just at its base. It's a domestic, so under Minnesota law, it's- But does it have to in every case for this to work? Does the misdemeanor have to be violent force? It does. So this is the same statute addressed in Schaefer, and here's the reasoning of Schaefer. Minnesota fifth degree simple assault requires either assault, what we refer to in this jurisdiction as assault harm or assault fear. You've either got to hurt somebody or you've got to threaten to cause imminent bodily harm. This court held in Schaefer that both prongs satisfy Curtis Johnson physical force. So any Minnesota statute including domestic assault that includes fifth degree assault as an element, which it does, would satisfy Curtis Johnson under the Schaefer decision. Okay, thank you. Let me check the panel before you leave. Any other questions? Okay, thank you. Ms. Paulus, as you approach, I forgot to thank you for taking this case on short notice and under the Criminal Justice Act. Thank you. My privilege, Your Honor. I'd like to address Judge Strauss' question, what case is closest? Your Honor, I would submit that the closest cases are Petty and Willoughby, where you had repeated actions happening very close in time, basically in a proximate location. Different victims, but in both of those situations, this court found that it was a continuous course of conduct. Here's why I disagree respectfully with the government's position that Hamill is the most analogous case. Hamill, as Judge Menton pointed out, involved a series of crimes occurring over 25 minutes. And in fact, what happened in that case was the defendant committed an assault inside of a bar, was not content to try to run away and escape from the scene of the crime, but then hung around outside looking for more crimes to commit. Assaulted a different person, and then when law enforcement was called, created more havoc. Essentially, this was a series of different crimes against different people over the course of time where he had an opportunity to premeditate on what he was doing. Whereas, what you have in our case is a man responding almost instinctively to being chased from the scene of a crime. And again, I think the involvement of law enforcement does make the situation different, which is again why I respectfully disagree with the government that Davidson or that Levering are relevant to this case. In fact, the situations in Davidson and Levering, if anything, show why this case is more on the Willoughby end of the spectrum. In Levering, you had an individual who stole a vehicle, drove the vehicle through an extended chase through three different counties, rammed a police car, attempted to assault other vehicles as he was careening down the road, and was charged with assault in three different jurisdictions. It's a matter here that we have different victims and different purposes. So in state court, the equivalent of this is the rest just a sort of doctrine. And there you look at different purposes. And so in Petty, for example, that he had the same purpose. It was to rob people, like rob six different people. In this case, by contrast, his purpose initially is to do the robbery. His purpose later is to facilitate his escape. Is that at all relevant here or not? Well, I think it is one factor for the court's consideration. I would submit, Your Honor, that it was part of a continuous course. And in that way, it's like what happened in Willoughby and in Petty, where he was responding instinctively to being chased. He wasn't premeditating that he was going to commit a different crime against other individuals. He fired a warning shot in the air, not trying to hurt the individual, but to warn him off. And then he continued to run. He didn't commit any more crimes after that. He successfully escaped. But I would submit that the relevant issue in both Levering and Davidson was the involvement of law enforcement. Council, when you said earlier, I about said it, so now I'm going to ask. I don't know about Minnesota. Does Minnesota have citizen's arrest for a felony in process? I don't know the answer. Missouri sure does. I don't know the answer to that question, Your Honor. Even if it does, there is something different about law enforcement being involved. I would say it's more analogous to an intervening arrest or an attempt at an arrest, where a citizen has clear notice that law enforcement is attempting to get involved. He is likely to be charged with a crime, and all conduct following thereafter is likely to result in additional violations. So there's something substantively different about law enforcement being involved. Council, let me just ask you this. I want to verify, you heard me in my exchange with opposing counsel, that I'm accurately characterizing your argument on the other point, the domestic assault. Which is that it's double counting, because it would otherwise be a misdemeanor. And the only way it becomes a third felony is by using these two prior felonies that you're already counting as ACA violations. You said it better than I did, Your Honor. Okay. And you characterized it accurately. I just want to make sure I understand. Thank you. Yes, Your Honor. Do you agree or disagree with the government's position regarding what's in the record? Do you agree that the charging documents are in the record? That's the first part of the question. And if so, do you think that we should look at those? Your Honor, I've known Mr. Ginn for ten years. He's an honorable man. And if he says that they are, I believe him. I will tell you what- You can send us a letter if that's some qualification. Send us a letter. Go ahead. And so what we were looking at was the evidence list from the trial. And it appeared from what was the final evidence list that the documents weren't included. Yes, I agree that that is something that is relevant for the court to consider. This is a fact intensive question. And the goal posts here I think are significantly far away when you think about the facts in cases like Davidson and Levering. And I see I've run out of time, Your Honor. But I would submit that if Mr. Petty is a career criminal, there is no distinction between this case and the mistake embraced in Petty. Let me see if there are other questions. Other questions from the panel? Thank you both for your very good argument and very good briefing. The case number 17-3236 is submitted to the court for decision. That concludes-